Filed 6/21/22 P. v. Martinez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ENRIQUE CISNEROS MARTINEZ,<br><br>Defendant and Appellant. | F082025<br><br>(Tulare Super. Ct. No. VCF373622)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County. Melinda Myrle Reed, Judge.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P. J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant and defendant Enrique Cisneros Martinez was convicted after a court trial of 18 counts involving the sexual molestation of a minor. On appeal, he contends he did not knowingly and intelligently waive his constitutional right to a jury trial on the charged offenses. He has not challenged the sufficiency of the evidence to support those convictions. The People have conceded the error, that his waiver of his right to a jury trial was not knowing and intelligent and agree the matter must be remanded for a new trial.

After careful review of the record, we agree that the trial court did not properly advise defendant of his constitutional right to a jury trial, defendant did not give a knowing and intelligent waiver of this right, and the structural error is reversible per se. We thus remand the matter for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 22, 2020, an information was filed in the Superior Court of Tulare County charging defendant with committing the following offenses between September 1 and December 1, 2018: counts 1 through 17, commission of lewd acts on a child, J.B., under the age of 14 years, with each offense alleged to have been committed at specific times and places (Pen. Code, § 288, subd. (a));[1] and count 18, contact with a minor with the intent to commit a sexual offense (*ibid*.). As to counts 1 through 8, it was further alleged defendant engaged in substantial sexual contact with the victim (§ 1203.066, subd. (a)(8)). Defendant pleaded not guilty and denied the special allegations.

**Pretrial Hearings About Possible Plea Offer**

On September 3, 2020, the court convened a status conference; defendant was not present. The court stated it would approve a negotiated plea for a sentence of 15 years. The prosecutor objected, and the court stated the plea would have to be to all the charges.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

The court directed the prosecutor to contact the victim and her family and advise them about the possible plea, and also directed defense counsel to discuss it with defendant.

On September 4, 2020, the court convened another status hearing; defendant was present with an interpreter. Defendant rejected the court's plea offer of 15 years and requested to set the matter for trial. The court advised defendant that it was a very good offer since the prosecutor wanted 40 years. The prosecutor clarified that the maximum possible sentence was 42 years. The court further advised defendant that if he turned down the plea offer, he could not accept it later. The court asked defendant to think about it and directed defense counsel to talk with him about it. Defendant agreed to think it over. Defendant ultimately rejected the plea offer.

**Initial Discussion About Possible Waiver of Jury Trial**

On Monday, September 14, 2020, the court held the trial confirmation hearing and stated trial was scheduled to start the next day. Defendant was not present.

Ms. Scoma, defendant's attorney, stated she was still in trial in another courtroom. The court noted that defendant had not waived time and asked about the time extensions resulting from the COVID emergency orders. Ms. Scoma stated she would talk to defendant about waiving time.

The following exchange occurred:

"[MS. SCOMA]: And I will also let the Court know *I will be speaking to [defendant] about possibly waiving a jury trial*. The district attorney offered a bench trial in this case. If we proceed next week, hopefully that's how we are proceeding, is a bench trial.

"THE COURT: That would be very much preferable for the Court. [¶] Thank you, Ms. Wayt [referring to the prosecutor]."

The court and Ms. Scoma discussed the possible trial schedule:

"MS. SCOMA: I will try to speak to [defendant] before. Then given my trial schedule, the fact that he's Spanish speaking and I have to coordinate the calls with the jail, it may be a few minutes. I need to speak with him in the jury room Friday morning.

3.

"THE COURT: Actually, if you can obtain a jury trial waiver, I would rather do that sooner rather than later. If he is onboard—and the People are, right, Ms. Wayt?

"MS. WAYT: I believe so. [¶] My concern, obviously, is the victim to come to court. And a court trial to me seems like very similar to essentially a slow plea, which is frustrating because it doesn't solve any issues in terms of having to have a teenager in the middle of COVID get on an airplane with her family and come to court and be exposed. That's my concern. [¶] I will put on the record that I know that there was speculation as to whether or not they would be under subpoena. They are under subpoena. They will be brought to court should we commence with the trial.

"THE COURT: Your concerns over the victim and over the entire proceeding are valid, and it would appear to me that both sides would benefit from a Court trial, given those types of concerns. Let's have you continue to meet and confer.

"MS. SCOMA: I don't want to talk to him about it if the People are going to back away from it.

"MS. WAYT: I'm not backing away from it.

"THE COURT: *You have indicated you are willing to proceed with a Court trial?*

"MS. WAYT: Yes.

"THE COURT: *All right. [¶] You need to pursue that.*

"MS. SCOMA: *I will.*

"THE COURT: And Ms. Wayt's concerns would be much more minimal with a Court trial than a jury trial, just the exposure to people.

"MS. WAYT: The exposure, but also putting the victim through it, which, I mean, it is what it is, but knowing the evidence in this case—I'll just leave it at that." (Italics added.)

The court adjourned the hearing.

4.

**The Court Finds Defendant Waived His Right to a Jury Trial**

On Friday, September 18, 2020, the court convened a continued jury trial conference. Defendant was present with an interpreter.

Ms. Scoma, defendant's attorney, stated she was still in trial in another proceeding until at least the following Monday or Tuesday. Ms. Scoma continued: "I'm not sure how long it will take to get a verdict, but I believe—*because my client has agreed to a Court trial in this case*, that if a verdict came in, we could simply pause, and I can run over. I think we can start on [next] Wednesday." (Italics added.)

The court found good cause to continue because Ms. Scoma was in another trial, and there had also been an extension of the emergency COVID-19 orders. The court asked Ms. Scoma if defendant agreed to waive time, and she said yes. The court asked defendant if he would waive time, and defendant said yes. The prosecutor also agreed to continue and said she would be ready to start on September 23 and would be filing motions with the court.

The court stated: "We have the motions in limine that I'll be ruling on. *I appreciate the waiver of jury from each of you*, which I'll take up in a minute, but we can do that at the commencement of the trial." (Italics added.)

The prosecutor stated she would move to have witnesses appear by Zoom because of COVID-19. Ms. Scoma objected. The court directed the parties to meet and confer on the matter, and stated that defendant had the right to confrontation, which was "the most superior right of confrontation that I can imagine," and it would not grant the prosecutor's motion unless defendant agreed.

The court returned to the matter of the jury trial:

"[THE COURT]:     So, Mr. Martinez, you understand you have the right to have a jury trial in this matter. [¶] Is that correct?

"THE DEFENDANT:     Yes.

"THE COURT: And do you give up that right and agree to have a Court trial?

"THE DEFENDANT: Yes.

"THE COURT: And Ms. Wayt [the prosecutor], the People do, as well?

"MS. WAYT: Yes, your Honor.

"THE COURT: And Ms. Scoma [defense counsel], you consent and concur in the waiver of jury?

"MS. SCOMA: Correct.

"THE COURT: Thank you, parties." (Italics added.)

The record contains no further discussion of the issue.

**Court Trial, Convictions, and Sentencing**

On Thursday, September 24, 2020, the court convened the first day of defendant's "court trial," addressed the motions in limine, and the prosecution introduced evidence in its case-in-chief.[2]

On September 28, 2020, the court granted the People's motion to conform count 13 to proof, the matter was submitted, and the court found defendant guilty as charged and the special allegations true.

On October 30, 2020, the court held the sentencing hearing. Defense counsel noted the court had originally offered a plea agreement for 15 years and asked the court to impose a sentence of 17 years.

The court denied defendant's motion and sentenced him to an aggregate term of 26 years based on the midterm of six years for count 1; consecutive terms of two years (one-third the midterm) for each of counts 2, 3, 5, 6, 7, 8, 11, 12, 13, and 17; concurrent

_____

[2] We need not address the trial evidence since defendant has not challenged the sufficiency of the evidence.

6.

terms of six years for each of counts 4, 9, 10, 14, 15, and 16; and a concurrent term of three years for count 18.

On November 10, 2020, defendant filed a timely notice of appeal.

## DISCUSSION

In this appeal, defendant raises one issue—that he did not knowingly and intelligently waive his right to a jury trial on the charges in the information, the error is reversible per se, and his convictions must be reversed. Defendant has not challenged the sufficiency of the evidence for retrial. The People have conceded the constitutional error, and request remand for a new trial.

After reviewing the pretrial proceedings and the applicable legal standards, we are compelled to find defendant did not knowingly and intelligently waive his constitutional right to a jury trial, and the error is structural and reversible per se.

## I.     Knowing and Intelligent Waiver of the Constitutional Right to a Jury Trial

"Under the federal Constitution and our state Constitution, a defendant in a criminal prosecution has a right to a jury trial. [Citations.] However, a 'jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).)

"Waiver must be 'express[ed] in words … and will not be implied from a defendant's conduct.' [Citation.] Moreover, 'a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' [Citations.] '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' " (*Sivongxxay, supra,* 3 Cal.5th at p. 166.)

7.

"[A] knowing and intelligent jury waiver requires an appreciation of the *nature* of the jury trial right and the *consequences* of forgoing this right. [Citation.] There is no additional constitutional requirement that a defendant be specifically advised of the specific charges, enhancements, allegations, or other issues to which a general jury waiver will apply." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 171.)

In *Sivongxxay,* the California Supreme Court acknowledged that while "case law has eschewed any rigid formula or particular form of words that a trial court must use in taking a jury waiver," it emphasized "the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial." (*Sivongxxay, supra,* 3 Cal.5th at p. 169; *ibid*.) *Sivongxxay* offered "general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Ibid*.)

> "Going forward, we recommend that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence. We also recommend that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id.* at pp. 169–170.)

*Sivongxxay* emphasized this guidance was advisory and "not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay, supra,* 3 Cal.5th at p. 170.) "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid. [Citations.] Reviewing courts

8.

must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary. (*Ibid.*, fn. omitted.)

After issuing the decision in *Sivongxxay*, the California Supreme Court clarified that it "continue[d] to eschew any rigid rubric for trial courts to follow in order to decide whether to accept a defendant's relinquishment of this right," but also asserted "the trial court is not merely a passive receiver of an attempted waiver." (*People v. Daniels* (2017) 3 Cal.5th 961, 992–993 (lead opn. of Cuéllar, J.); *id.* at p. 993.) "We uphold the validity of a jury waiver ' "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances." ' [Citation.] We do not start with a presumption of validity that may only be rebutted by signs of a defendant's confusion or unwillingness in entering a waiver. Instead, a reviewing court satisfies itself of a legitimate waiver only when the record affirmatively demonstrates it was knowing and intelligent." (*Id.* at p. 991.)

"Under the federal Constitution, the right to trial by jury is recognized as fundamental, and its denial is 'structural error,' compelling reversal of a judgment of conviction without the necessity of a determination of prejudice. [Citations.] Similarly, under the California Constitution, the right to jury trial is fundamental, and its denial is considered a 'structural defect in the proceedings,' resulting in a 'miscarriage of justice' within the meaning of California Constitution, article VI, section 13, and requiring that the judgment of conviction be set aside." (*People v. Collins* (2001) 26 Cal.4th 297, 311.)

## II. Application of *Sivongxxay* Guidelines

In *Sivongxxay,* the court applied the guideline it had set out and held the defendant's jury trial waiver in that case was knowing and intelligent:

> "Although defendant is a Laotian refugee with no formal education and limited English proficiency, he was represented by counsel and assisted by a translator throughout the trial. The defense initiated the request for a court trial. In response, the trial court advised defendant that he had a right to a jury trial, that a jury consists of 12 people from the community, that he

9.

would have the right to participate in the selection of the jury, and that waiver of the right to a jury would mean the judge alone would determine his guilt or innocence and any resulting punishment. After these advisements, defendant answered 'Yes' when asked whether he wished to 'give up [his] right to a jury trial and agree that this Court, alone, will make those decisions.' The trial court then observed that the waiver applied to 'all issues' at trial. Additionally, defendant had prior experience with the criminal justice system, having pleaded guilty to two prior offenses in Oregon and one in Washington State. In 1993, in connection with his guilty plea in Washington, he signed a waiver stating that he 'fully underst[ood]' his right to a jury trial. [Citations.] Viewed holistically, the circumstances surrounding defendant's jury waiver demonstrate that it was knowing and intelligent." (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 167–168, fn. omitted.)

*Sivongxxay* rejected the defendant's argument that the waiver was deficient because the trial court had not explained the jury had to be impartial and render a unanimous verdict. " '[T]he United States Supreme Court has never held that a defendant, when waiving the right to a jury, constitutionally is entitled to be canvassed by the trial court, let alone to require a specifically formulated canvass' [citations], and we have never insisted that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent." (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 168–169, fn. omitted.) *Sivongxxay* held that under the totality of the circumstances, "the presence or absence of a reference in a colloquy to this particular attribute of a jury trial, or to the impartiality requirement, is not necessarily determinative of whether a waiver meets constitutional standards." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 168.)

In *People v. Blancett* (2017) 15 Cal.App.5th 1200 (*Blancett*), the court held that, based on the guidelines in *Sivongxxay,* the record was "bereft of evidence" that the defendant in a mentally disordered offender (MDO) recommitment hearing was sufficiently advised of his right to a jury trial and that he knowingly and voluntarily waived that right. (*Blancett*, at p. 1202.) Prior to the hearing, the court appointed counsel to represent the defendant, counsel accepted the appointment, and immediately

requested a court trial. (*Id*. at p. 1203.) The court then addressed the defendant and advised him that his attorney " 'says that you are okay with having a judge decide your case and not a jury?' " The defendant replied yes. The court asked the defendant, " 'That's okay with you?' " The defendant said yes. (*Ibid*.)

*Blancett* held the defendant "did not waive his right to a jury trial with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. [Citation.] The trial court did not inform [the defendant] that he had a right to a jury trial, nor did the court explain the significant attributes or mechanics of a jury trial. [Citation.] Neither did the court inquire whether [the defendant] had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether [he] had any questions about the waiver. [Citation.] In a barebones colloquy, the court asked only if [the defendant] was 'okay' with a court trial instead of a jury trial. [Citation.] Indeed, the court appointed counsel moments before [the defendant] entered his waiver and there is no record of discussion between [the defendant] and his attorney prior to the waiver. [¶] Moreover, this was [the defendant's] initial MDO commitment and the record does not suggest that [he] was familiar with MDO proceedings or that he was aware that he was entitled to a jury trial. Although he pleaded guilty to two counts of child molestation two years prior to the MDO hearing, we have no record of the advisements he received before entering that plea. On this record, we do not presume that [the defendant] was legally sophisticated." (*Blancett, supra*, 15 Cal.App.5th at p. 1206.)

In *People v. Jones* (2018) 26 Cal.App.5th 420 (*Jones*), the court also relied on *Sivongxxay*'s guidelines and held the record did not affirmatively show the defendant's jury trial waiver was knowing and intelligent under the totality of the circumstances. (*Jones*, at p. 437.) Prior to trial, the prosecutor took the waivers of the defendant and her codefendant Lucero as follows:

11.

" '[Prosecutor]:   Ms. Jones, Mr. Lucero, your attorneys have indicated that you wish to waive jury and have this case decided by [the court] sitting alone.  In order to do that, you each have to waive your right to a jury trial.  Ms. Jones, do you understand your right to a jury trial?

" 'Defendant Jones:   Yes, sir.

" '[Prosecutor]:   Do you agree to waive that right and have [the court], sitting alone, decide the case?

" 'Defendant Jones:   Yes, sir.

" '[Prosecutor]:   Mr. Lucero, do you also understand your right to a jury trial?

" 'Defendant Lucero:   Yeah.

" '[Prosecutor]:   Do you agree to waive that right and agree that [the court], sitting alone, would make the decision on this case?

" 'Defendant Lucero:   Yes.' " (*Id.* at p. 428.)

The attorneys for both the defendant and Lucero joined in the waiver.  (*Ibid.*)

*Jones* noted that prior cases addressing the validity of jury trial waivers "consistently concluded that the failure of a trial court to provide a specific advisement does not mean there was not a knowing, intelligent, and voluntary waiver," but that trial courts in prior cases "inquired extensively of the defendants before accepting their jury trial waivers, specifically advising them that they would be giving up the right to have their case decided by 12 members of a jury drawn from the community or comprised of citizens."  (*Jones, supra*, 26 Cal.App.5th at p. 430; *id.* at p. 431.)

*Jones* held the case's "sparse record" did not affirmatively show that the defendant's waiver was voluntary and intelligent under the totality of the circumstances, "[t]here is no showing from this record that [the defendant] understood the nature of the right to a jury trial she was relinquishing," and the defendant was only advised that the court alone would decide whether she was guilty or innocent.  (*Jones, supra*, 26 Cal.App.5th at p. 435; *id.* at p. 436.)

"The record shows that [the defendant] had some discussion with her attorney before the waiver was taken in that it was her attorney who indicated to the trial court that [the defendant] wanted to waive her right to a jury trial. However, the record does not show whether [the defendant's] attorney ever discussed with her the nature of a jury trial, including for example, that the jury would be comprised of 12 of her peers from the community. Further, the trial court did not specifically advise [the defendant] that she had a right to a jury trial, instead only asking her, '[D]o you understand your right to a jury trial?' She responded, 'Yes, sir.' The only real advisement by the trial court was that, as a result of [the defendant's] waiver, the trial judge 'sitting alone' would 'decide the case.' [She] agreed, again responding, 'Yes, sir.' " (*Id.* at p. 435.)

*Jones* held there was nothing in the record to show the defendant "was aware that a jury is comprised of individuals drawn from the community. Moreover … [the defendant] had no experience with the criminal justice system. Neither the information nor the probation report reveals a prior criminal charge. [¶] Rather, this case is more similar to *Blancett*, in which the trial court's entire inquiry was whether the defendant was 'okay' with having his case decided by a judge instead of a jury. [Citation.] The additional statement by [the defendant] that she understood her right to a jury trial does not change the fact that, as in *Blancett*, [the defendant] 'did not waive [her] right to a jury trial with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it.' " (*Jones, supra*, 26 Cal.App.5th at p. 437)

*Jones* concluded the record did not affirmatively show the defendant's jury waiver was voluntary and intelligent under the totality of the circumstances. (*Jones, supra*, 26 Cal.App.5th at p. 437.) *Jones* rejected the defendant's separate contention that there was insufficient evidence to support her convictions, and held there was substantial evidence to allow remand for retrial. (*Id.* at pp. 437–444.)

III. **Analysis**

Defendant relies on *Sivongxxay, Blancett,* and *Jones*, and argues the record of his jury trial waiver is "about as scant as any record could be," and the court failed to advise him about the nature of a court trial and a jury trial, the differences between the two

13.

proceedings, or ask if he had any questions about "what he was waiving or agreeing to." While defendant and his attorney may have discussed the issue once, there is no evidence about the length or specific content of their conversation, and the record "falls far short" of affirmatively establishing defendant entered a knowing and intelligent waiver.

*Sivongxxay* emphasized that its guidelines as to whether a defendant's waiver of his right to a jury trial was knowing and intelligent were advisory and "not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay, supra,* 3 Cal.5th at p. 170.) In this case, however, there is no evidence to affirmatively show that defendant's jury trial waiver was knowing and intelligent. First, the record shows that defendant wanted a trial to challenge the charged offenses. He turned down a plea offer and stated his intent to proceed with trial, even after the court explained that the prosecution's evidence was strong, and the plea offer for 15 years was far more favorable than the maximum possible sentence of 42 years.

Second, there were several exchanges between the court and the parties during the September 14, 2020, hearing, where the possibility of a court trial was first addressed. Defendant was not present for this hearing, however, and the court directed defense counsel to speak with defendant to determine if he was "onboard" for a court trial. Defense counsel explained that she had to coordinate a jail call to defendant with an interpreter or meet with him in the jury room before the next hearing. The record is silent, however, as to whether or when that conversation occurred, the nature and context of the conversation, and whether defense counsel fully explained defendant's constitutional right to a jury trial to him.

The entire matter should have been clarified at the September 18, 2020, hearing, where the court prepared to take defendant's waiver of his right to a jury trial, but the court's exchange with defendant about his constitutional right was as "sparse" as that found wanting in *Jones*. (*Jones, supra*, 26 Cal.App.5th at pp. 435, 436.) Defendant did not sign a written advisement and waiver, so the only evidence is from the hearing itself.

14.

Defense counsel advised the court that defendant had "agreed to a Court trial in this case," but the court did not ask counsel about the nature and extent of that conversation, and whether she advised defendant of his right to a jury trial and explained the difference between a jury and a court trial. Instead, the court immediately asked defendant if he understood he had "the right to have a jury trial in this matter," and defendant said yes. The court next asked defendant if he gave up "that right and agree to have a Court trial," and defendant again said yes. The court obtained the agreements from the prosecutor and defense counsel to have a court trial, and that was the full extent of the court's advisement and defendant's waiver.

While the court asked defendant if he knew he had the right to a jury trial and gave up that right, the court did not "explain the significant attributes or mechanics of a jury trial. [Citation.] Neither did the court inquire whether [the defendant] had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether [he] had any questions about the waiver." (*Blancett, supra*, 15 Cal.App.5th at p. 1206.) The court did not "inquire[] extensively" of defendant to specifically advised him that he "would be giving up the right to have [his] case decided by 12 members of a jury drawn from the community or comprised of citizens." (*Jones, supra*, 26 Cal.App.5th at p. 431; *ibid*.) There was "no showing" that defendant "understood the nature of the right to a jury trial []he was relinquishing," or that the court alone would decide whether he was guilty or innocent. (*Id*. at p. 436; *ibid*.) Also as in *Jones*, the record is completely silent as to whether or when defense counsel discussed this issue prior to the September 18, 2020, hearing, and if counsel discussed with him "the nature of a jury trial, including for example, that the jury would be comprised of 12 of her peers from the community. Further, the trial court did not specifically advise [the defendant] that []he had a right to a jury trial, instead only asking [him], '[D]o you understand your right to a jury trial?' " (*Id*. at p. 435.)

Also as in *Jones*, there is no evidence the defendant had prior experience with the criminal justice system. The record in this case shows that defendant's only prior criminal experience was in 2016, when he was convicted of two misdemeanors for being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)); and driving without a license (Veh. Code, § 12500, subd. (a)) and was placed on probation. The record is silent as to how the two misdemeanor convictions occurred and whether they resulted from pleas, jury trials, or court trials.

We agree with defendant's arguments, and the People's concession in this appeal, that as in *Jones* and *Blancett*, there is no affirmative evidence to show defendant's waiver of his right to a jury trial was knowing and intelligent, and that he appreciated "the *nature* of the jury trial right and the *consequences* of forgoing this right." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 171.)

In reaching this conclusion, we further note that defendant has not challenged the sufficiency of the evidence in support of his convictions or disagreed with the People's request to remand this matter for retrial.[3] As a result, we reverse defendant's convictions but remand the matter for retrial and further appropriate proceedings.

## DISPOSITION

The judgment is reversed. The matter is remanded for a new trial.

---

[3] Defendant did not challenge the sufficiency of the evidence in his opening brief. As explained above, the People's brief conceded the constitutional error but argued the matter must be remanded for retrial since defendant did not challenge the sufficiency of the evidence. Defendant did not file a reply brief.